*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ANGELO FAVOT,

        Plaintiff-Appellee,

v

JIMARION BROWN,

        Defendant,

and

MEMBERSELECT INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
September 18, 2025
10:20 AM

Nos. 368733; 368734
Wayne Circuit Court
LC No. 22-001890-NI

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

CAMERON, P.J.

In these consolidated interlocutory appeals regarding payment of personal protection insurance (PIP) benefits, defendant[1] appeals by delayed leave granted[2] the orders denying its motions for partial summary disposition under MCR 2.116(C)(7) (payment) and (10) (no genuine issue of material fact). We affirm, in part, reverse, in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was injured in a motor vehicle accident. Plaintiff initiated this action, alleging that defendant, his insurer, failed to fully reimburse his first-party PIP benefits in violation of the

---

[1] Because defendant Jimarion Brown was dismissed from the case by a stipulated order, and is not a party to these appeals, we will refer to MemberSelect Insurance Company as "defendant" throughout this opinion.

[2] *Favot v Brown*, unpublished order of the Court of Appeals, entered April 15, 2024 (Docket No. 368733); *Favot v Brown*, unpublished order of the Court of Appeals, entered April 15, 2024 (Docket No. 368734).

no-fault act, MCL 500.3101 *et seq*. Defendant eventually filed two motions for partial summary disposition regarding some of the charges submitted by plaintiff's medical providers, arguing it had paid the maximum amounts allowed under the no-fault fee schedule, MCL 500.3157. Specifically, defendant claimed that, under MCL 500.3157(15)(f), it could apply certain limitations commonly used by Medicare to determine the amount payable to plaintiff's medical providers, because the limitations were related to the rates in the Medicare fee schedule. The trial court denied defendant's motions for summary disposition. These appeals followed.

## II. STANDARDS OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "MCR 2.116(C)(7) permits summary disposition 'because of release, payment, prior judgment, [or] immunity granted by law.' " *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015), quoting MCR 2.116(C)(7) (alteration in *Clay*). "When [a court] grants a motion under MCR 2.116(C)(7), [it] should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Clay*, 311 Mich App at 362 (quotation marks and citation omitted).

"A motion under MCR 2.116(C)(10), on the other hand, tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (emphasis omitted). As with motions under MCR 2.116(C)(7), trial courts considering motions under MCR 2.116(C)(10) "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

We review issues of statutory interpretation de novo. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019) (quotation marks and citation omitted). "The most reliable evidence of legislative intent is the plain language of the statute." *Id*. Clear and unambiguous statutory language must be applied as written. *Measel v Auto Club Group Ins Co*, 314 Mich App 320, 326; 886 NW2d 193 (2016). Moreover, we must interpret "statutory provisions in harmony with the entire statutory scheme." *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 544; 942 NW2d 696 (2019).

## III. ANALYSIS

Defendant argues that the trial court erred by denying its motions for summary disposition because there was no genuine issue of material fact that MCL 500.3157 authorized it to apply limitations related to the rates in Medicare's no-fault fee schedule when determining the amount payable. Defendant also argues that it properly paid plaintiff's claims. We agree, in part.

"The no-fault act is Michigan's statutory framework for insurance coverage, compensation, and dispute resolution related to motor vehicle accidents." *True Care Physical Therapy, PLLC v*

*Auto Club Group Ins Co*, 347 Mich App 168, 177; 14 NW3d 456 (2023). In 2019, the Legislature amended the no-fault act in an attempt to control the cost of automobile insurance. *Andary v USAA Cas Ins Co*, 512 Mich 207, 214; 1 NW3d 186 (2023). As part of these reforms, the Legislature amended MCL 500.3157 to include fee schedules, that cap the amount payable to providers who render treatment for accidental bodily injury to an injured person under the no-fault act. The portions of MCL 500.3157 at issue here state:

(2) Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement under this chapter for more than the following:

(a) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the *amount payable* to the person for the treatment or training under Medicare.

(b) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 195% of the *amount payable* to the person for the treatment or training under Medicare.

(c) For treatment or training rendered after July 1, 2023, 190% of the *amount payable* to the person for the treatment or training under Medicare.

* * *

(7) If Medicare does not provide an *amount payable* for a treatment or rehabilitative occupational training under subsection (2), (3), (5), or (6), the physician, hospital, clinic, or other person that renders the treatment or training is not eligible for payment or reimbursement under this chapter of more than the following, as applicable:

(a) For a person to which subsection (2) applies, the applicable following percentage of the *amount payable* for the treatment or training under the person's charge description master in effect on January 1, 2019 or, if the person did not have a charge description master on that date, the applicable following percentage of the average amount the person charged for the treatment on January 1, 2019:

(*i*) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 55%.

(*ii*) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 54%.

(*iii*) For treatment or training rendered after July 1, 2023, 52.5%.

* * *

(15) As used in this section:

\* \* \*

(f) "Medicare" means fee for service payments under part A, B, or D of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395lll, *without regard to the limitations unrelated to the rates in the fee schedule* such as limitation or supplemental payments related to utilization, readmissions, recaptures, bad debt adjustments, or sequestration. [MCL 500.3157(2), (7), and (15)(f) (emphasis added).]

The parties disagree about whether MCL 500.3157(15)(f) allows defendant to apply certain limitations, reductions, and adjustments when determining the amount payable to plaintiff's medical providers. The specific interpretation at issue here involves whether defendant may apply the "packaged-service" rule,[3] the multiple-procedure payment reduction rule (MPPR),[4] or billing modifiers,[5] that Medicare utilizes when determining the amount payable to providers. Defendant

---

[3] Under Medicare's Hospital Outpatient Prospective Payment System (OPPS):

[P]ackaged services are items and services that are considered to be an integral part of another service that is paid under the OPPS. No separate payment is made for packaged services, because the cost of these items and services is included in the APC payment for the service of which they are an integral part. For example, routine supplies, anesthesia, recovery room use, and most drugs are considered to be an integral part of a surgical procedure so payment for these items is packaged into the [ambulatory payment classification] payment for the surgical procedure. [Centers for Medicare & Medicaid Services Medicare Claims Processing Manual, *Packaging* <https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c04.pdf> (accessed September 16, 2025)]

[4] Under the MPPR, if healthcare providers perform multiple procedures during a single patient encounter, Medicare generally will pay "full price" for only the highest-valued procedure, and will pay less for any subsequent procedures during the same encounter. Typically, the primary procedure is reimbursed "at 100 percent of the fee schedule value, and the second and all subsequent procedures will be reimbursed at 50 percent of the fee schedule value." John Verhovsek, American Academy of Professional Coders, *Just the Facts: Multiple Procedure Payment Reductions (MPPR)* <https://www.aapc.com/blog/41773-mppr-facts/?srsltid=AfmBOoqhjv5E_Xgoqp1I9EQBYG_z5EXxlCrzhFn5hcXl6UhuJ9nv6F3Y> (posted April 5, 2018) (accessed September 16, 2025).

[5] Billing modifiers "provide the means by which the reporting provider can indicate a service or procedure has been altered by some specific circumstance but has not changed in its definition or code." These modifiers may be used to indicate, among other things, that a service was performed by more than one physician, the service was increased or reduced, only part of a service was performed, an additional service was performed, or unusual events occurred. These modifiers may

contends that these limitations may be applied because they are related to the rates in the Medicare fee schedule. Plaintiff construes MCL 500.3157(15)(f) differently. He contends that these particular limitations are unrelated to, and, therefore, cannot be used to reduce the amount owed to plaintiff's medical providers.

This Court's recent opinion in *Central Home Health Care Servs, Inc v Progressive Mich Ins Co*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364653), supports defendant's interpretation. In *Central Home*, this Court interpreted MCL 500.3157.[6] Relevant here, the plaintiff argued that the definition of "Medicare" in MCL 500.3157(15)(f) was strictly limited to Medicare's fee-for-service payments "made pursuant to a 'fee schedule' " *Central Home Health Care*, ___ Mich App at ___; slip op at 5. This Court rejected the plaintiff's narrow construction, finding that "nothing in the definition of Medicare in Subsection (15)(f) makes the method of calculation relevant for determining the application of Subsection (2) or Subsection (7) . . . ." *Id*. at ___; slip op at 6. This Court explained that, while the second clause of MCL 500.3157(15)(f) provides that "if a fee schedule is involved and other adjustments *unrelated* to the rate in the fee schedule would be made under Medicare, those adjustments are not to be considered for purposes of the no-fault act[,]" it did *not* state that there "could not be another applicable method . . . for calculating the amount Medicare would pay for a service." *Id*. (emphasis added). Insurers may use other applicable methods to calculate the amount payable for treatment rendered to an insured. *Id*. Thus, under *Central Home*, the amount payable by insurers are not determined by the rates in the fee schedule alone, but also by applying limitations related to the rates in the fee schedule.

This interpretation is supported by the plain language of the relevant statute. MCL 500.3157(15)(f) defines "Medicare" as "fee for service payments under part A, B, or D of the federal Medicare program . . . *without regard to the limitations unrelated to the rates in the fee schedule such as* limitation or supplemental payments related to utilization, readmissions, recaptures, bad debt adjustments, or sequestration." (Emphasis added.) Under the canon of *ejusdem generis*, when "general rules follow a designation of particular subjects, the meaning of the general rules will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." *Rott v Rott*, 508 Mich 274, 299 n 11; 972 NW2d 789 (2021) (quotation marks and citation omitted). Applying this canon to MCL 500.3157(15)(f), "limitations *unrelated* to the rates in the fee schedule" cannot be considered by insurers, including limitations or supplemental payments of the same kind, class, character, or nature as those related to "utilization, readmissions, recaptures, bad debt adjustments, or sequestration."

Thus, the question before us is whether the limitations defendant seeks to apply are "of the same kind, class, character, or nature" as the *unrelated* limitations listed in MCL 500.3157(15)(f).

---

change the rate of the service provided. National Government Services, *Modifiers* <https://www.ngsmedicare.com/sv/modifiers?lob=97346&state=97357&rgion=0&selectedArticl eId=1410904#top> (posted October 16, 2024) (accessed September 16, 2025).

[6] We note that plaintiff incorrectly asserts that *Central Home Health Care* was unpublished and should not be given weight.

"Utilization" refers to "[a] measure of the extent to which the members of a covered group use a program or obtain a particular service, or category of procedures, over a given period of time."[7] To evaluate utilization, medical services are reviewed and audited to determine if a treatment or procedure was reasonable and medically necessary, met professionally recognized standards of health care, and could be provided more economically. 42 USC 1320c-3(a)(1). If a service or treatment does not meet these standards, the Centers for Medicare and Medicaid Services (CMS) may deny payment. 42 USC 1320c-3(a)(3).

"Readmissions" refer to cases of individuals who are discharged from an applicable hospital and then admitted "to the same or another applicable hospital within a time period of 30 days from the date of such discharge." 42 CFR 412.152.[8] To reduce readmissions and encourage communication between hospitals, patients, and caregivers, CMS tracks the rates of hospital readmissions and "calculates the payment reduction and component results for each hospital based on its performance" during a performance period.[9] Using the readmission rates, CMS reduces payments for "all Medicare fee-for-service base operating diagnosis-related group payments" during the fiscal year.[10]

"Recaptures" refers to the process of "identifying and classifying recurring Hierarchical Condition Categories (HCCs) that accurately reflect an individual's chronic conditions."[11] HCCs group similar diagnoses together "into one related category . . . to be used in a risk adjustment payment model."[12] CMS uses the HCCs and risk adjustment payment models to ensure "that

---

[7] Centers for Medicare and Medicaid Services, *Medicare and Medicaid Summary Statistics Glossary* <https://data.cms.gov/sites/default/files/2022-10/CPS%20GLOSSARY.pdf> (accessed September 16, 2025).

[8] We note that 42 CFR 412.152 was deemed invalid by *Kaweah Delta Health Care Dist v Becerra*, 123 F4th 939 (CA 9, 2024). There is no indication, however, that the *Kaweah* Court's decision was based on the regulation's definition of "readmission" on which we rely.

[9] Centers for Medicare and Medicaid Services, *Hospital Readmission Reduction Program* <https://www.cms.gov/medicare/payment/prospective-payment-systems/acute-inpatient-pps/hospital-readmissions-reduction-program-hrrp> (accessed September 16, 2025).

[10] *Id*.

[11] Inferscience, *Mastering HCC Recapture: Proven Strategies for Success* <https://www.inferscience.com/mastering-hcc-recapture-proven-strategies-for-success#:~:text=The%20essential%20process%20of%20HCC,classification%20more%20critical%20than%20ever.> (posted March 13, 2025) (accessed September 16, 2025).

[12] American Academy of Professional Coders, *What IS HCC Coding?* <https://www.aapc.com/resources/what-is-hierarchical-condition-category?srsltid=AfmBOopNyswyYsOCK6ku0No9pgGlxrxplqaCc_11Sd7XWbjMXSekXYQu> (accessed September 16, 2025).

healthcare professionals receive appropriate reimbursement for the care they deliver."[13] "Bad debt adjustments" concern adjustments for "amounts considered to be uncollectible from patient accounts that were created or acquired in providing services and are categorized as implicit price concessions for cost reporting purposes and are recorded in the provider's accounting records as a component of net patient revenue." 42 CFR 413.89(b)(1)(*ii*). Bad debts "represent reductions in revenue[,]" 42 CFR 413.89(c)(2)(*i*), and providers may write off allowable bad debts or receive reimbursement for bad debts that have already been written off, 42 CFR 413.89(f). Finally, "sequestration" refers to the automatic reduction of spending, generally by a uniform percentage, to meet or enforce budgetary policies or goals.[14]

These statutory examples of unrelated limitations consist of grounds for denying unreasonable expenses, avenues for provider- and hospital-wide reimbursements, hospital-wide reductions in Medicare payments, or nationwide cancellations in payments. They do not relate to the amount Medicare pays for a particular procedure under Medicare's fee schedule. They are, therefore, *unrelated* to the fee schedule. MCL 500.3157(15)(f)

There are limitations and reductions, however, that *are* related to the rates and amount payable by Medicare. Relevant here, the MPPR provides payment reductions for multiple surgical procedures; Medicare pays 100 percent of the cost for the procedure "with the highest national unadjusted" payment rate, and 50 percent of the cost for "all other covered surgical procedures." 42 CFR 416.172(e)(1)(*i*) and (*ii*). Thus, the MPPR affects the *amount payable* by Medicare. MCL 500.3157(2) and (7). Similarly, under the packaged-service rule, 42 CFR 416.164(a), there are various services under which payments are "packaged into the . . . payment for a covered surgical procedure under [42 CFR] 416.166[.]" Although each service and procedure has its own rate established in the fee schedule, by packaging these services together, the *amount payable* by Medicare is reduced. MCL 500.3157(2) and (7). Finally, billing modifiers—such as the adjustment based on a provider's geographical location at issue in this case—also change the *amount payable* by either increasing or decreasing the rates in the fee schedule, MCL 500.3157(2) and (7); with respect to the geographical location modifier, the rates are modified to accommodate the variations in labor costs across different geographical areas. See 42 CFR 416.172(a)-(c). Because these limitations implicate the rates in the fee schedule in order to determine the "amount payable" by Medicare to providers under MCL 500.3157(2) and (7), they are related limitations under MCL 500.3157(15)(f).

Accordingly, the limitations defendant applied here *are* related to the fee schedule. Defendant used the rates in the fee schedule to determine an initial payment amount, then adjusted

---

[13] Inferscience, *Mastering HCC Recapture: Proven Strategies for Success* <https://www.inferscience.com/mastering-hcc-recapture-proven-strategies-for-success#:~:text=The%20essential%20process%20of%20HCC,classification%20more%20critical%20than%20ever.> (posted March 13, 2025) (accessed September 16, 2025).

[14] Ryan J. Rosso, Congressional Research Service, *Medicare and Budget Sequestration* (November 14, 2023) <https://www.congress.gov/crs-product/R45106> (accessed September 16, 2025).

the rates in the fee schedules to determine the amount payable by Medicare under MCL 500.3157(2) and (7) by applying the MPPR, packaged-service rule, and geographical billing modifier. Because these limitations and reductions are related to the fee schedule, they are not of the same kind, class, character, or nature as those prohibited by MCL 500.3157(15)(f). See *Rott*, 508 Mich at 299 n 11.[15] Thus, under the plain language of MCL 500.3157(2)(a), limitations such as the MPPR, the packaged-service rule, and the geographic billing modifier affect the amount Medicare would pay for the particular service, meaning they may be considered for purposes of the no-fault act. See *Central Home Health Care*, ___ Mich App at ___; slip op at 4, 6; MCL 500.3157(15)(f).

We, therefore, conclude that the trial court erred by denying defendant's motion for partial summary disposition under MCR 2.116(C)(10), because no genuine issue of material fact existed concerning whether defendant could apply limitations related to the rates in the fee schedule. See *El-Khalil*, 504 Mich at 160. But because application of the related limitations and reductions affects the amount payable by Medicare, and, as a result, what defendant must pay, factual questions still remain. Accordingly, summary disposition under MCR 2.116(C)(7) was not appropriate, and the trial court did not err by denying defendant's motion for partial summary disposition on those grounds.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Daniel S. Korobkin

---

[15] Plaintiff contends that the Department of Insurance and Financial Services (DIFS) has already addressed defendant's argument, finding that Medicare rules do not apply when determining the amount payable under the no-fault act. See *Lighthouse Inc v Pioneer State Mutual Insurance Company*, file no. 22-1565, issued July 29, 2022; *Thrive Rehabilitation, LLC v Meemic Ins Co*, file no. 21-1506, issued December 27, 2021. While we recognize that courts give "respectful consideration" to an administrative agency's construction of a statute, "the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Technical, Professional, & Officeworkers Ass'n of Mich v Renner*, 513 Mich 57, 76; 15 NW3d 524 (2024) (quotation marks and citation omitted).